IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-02024-NRN

AQUARION AG,

      Plaintiff/Counter-Defendant,

v.

PEAKVIEW PARTNERS, LLC,

      Defendant/Counter-Claimant.

---

**ORDER ON AQUARION AG'S MOTION TO DISMISS PEAKVIEW PARTNERS, LLC'S COUNTERCLAIMS (ECF No. 20)**

---

**N. REID NEUREITER**
**UNITED STATES MAGISTRATE JUDGE**

      This matter is before the Court on Plaintiff Aquarion AG's ("Aquarion") Motion to Dismiss Peakview Partners, LLC's Counterclaims ("Motion"), ECF No. 20, filed on October 10, 2025. Peakview Partners, LLC ("Peakview") filed a response on November 14, 2025, ECF No. 29. Aquarion filed its reply on December 5, 2025, ECF No. 30. The Court held oral argument on March 4, 2026. *See* ECF No. 31.

      The Court has taken judicial notice of the Court's file, considered the applicable Federal Rules of Procedure and case law. Now, being fully informed and for the reasons discussed below, the Court **GRANTS IN PART** Aquarion's Motion as it relates to Peakview's first counterclaim, and reserves judgment on the remaining arguments.

### I. BACKGROUND[1]

Peakview is a Denver-based, FINRA (Financial Industry Regulatory Authority) and SIPC (Securities Investor Protection Corporation) regulated investment bank with its principal place of business at 3017 East 2nd Avenue, Denver, Colorado 80206. ECF No. 1 ¶ 3. Aquarion AG is a Swiss-based company specializing in industrial wastewater treatment. Aquarion's principal place of business at Bahnhofstrasse 23, 6300, Zug, Switzerland.

A Swiss entity now known as Wotan AG ("Wotan") entered into an agreement ("Agreement") with Peakview on February 11, 2023 by which Peakview would perform certain "investment banker and representative" duties for Wotan with respect to a potential transaction. Subject to the terms of the agreement, Wotan would owe Peakview a fee at the close of a successful transaction (the "Success Fee"). ECF No. 1 ¶ 7.

At the time of the Agreement, Wotan was incorporated under the name "Aquarion AG." Wotan, f/k/a Aquarion AG (with Swiss registration number CHE-116.309.082) changed its company name to "Wotan AG" on August 31, 2023, which was published by the Swiss Official Commercial Gazette on September 12, 2023. *Id.* at 3 n.1. Plaintiff in this case, the entity that is *currently* named "Aquarion AG" (with Swiss registration number CHE-255.433.941), was incorporated the same day, August 31, 2023. *Id.* This incorporation was also published by the Swiss Official Commercial Gazette on

---

[1] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

September 12, 2023. *Id.*[2] Both entities are domiciled, incorporated, and headquartered in Switzerland. *Id.* ¶ 9.

Peakview alleges that it directly facilitated the sale of Wotan's operating business to Gradiant Corporation ("Gradiant"), and that as a condition precedent of that sale, Wotan "transferred virtually all of its assets to a newly created entity ([Aquarion]) . . . ." ECF No. 11 at 6. The agreement between Wotan and Gradiant was reached August 26, 2023. *Id.* at 12. Peakview claims that Wotan was "contractually obligated to pay Peakview a transaction success fee . . . upon its agreement to consummate the Gradiant transaction." ECF No. 11 ¶ 80. Wotan, however, refused to pay the Success Fee. *Id.* ¶ 13.

Accordingly, Peakview initiated an arbitration proceeding against Wotan to recover the Success Fee. ECF No. 1 at 5. On October 22, 2024, the arbitrator, former Denver District Court Judge William G. Meyer, entered judgment in favor of Peakview. *Id.* On November 19, 2024, the Denver District Court confirmed the arbitration award and entered judgment against Wotan ("Judgment"). *Id.*

As a result of Wotan's failure to pay the Judgment, Peakview initiated arbitration proceedings (the "Arbitration") against Aquarion to recover the Success Fee based in part on a successor liability theory.[3] *Id.* Aquarion objected to the Judicial Arbiter Group's

---

[2] In its answer and counterclaim, Peakview refers to refers to Wotan AG f/k/a/ Aquarion AG as "Old Aquarion" and Plaintiff Aquarion AG as "New Aquarion." For the sake of clarity, the Court will refer to the corporate entities by the name they are incorporated under in Switzerland—"Wotan" and "Aquarion," respectively.

[3] Peakview argues that where "a newly formed entity is a mere continuation of its predecessor, retains the same management, shareholders, address, and business operations, and directly benefits from the predecessor's contracts and services, successor liability attaches as a matter of equity and law." ECF No. 11 at 7.

("JAG") jurisdiction over the matter and argued that the arbitrability of the dispute must be decided by a court. *Id.* ¶ 14. Peakview contends that the "arbitrator is to decide the enforceability of an arbitration agreement and procedural arbitrability." ECF No. 11 ¶ 48.

In disputing its status as a successor-in-interest to Wotan, Aquarion cites the Asset Purchase Agreement ("APA") dated September 26, 2023, by which Aquarion acquired certain assets from Wotan. Aquarion alleges that the APA contained a provision stating that the transaction "'shall not constitute and shall not be construed as constituting a universal succession of liabilities and assets pertaining to a business.'" ECF No. 1 at 4.

Sometime in June 2025, the parties reached an agreement to stay the Arbitration pending this Court's resolution of the threshold issue of arbitrability. To that end, Aquarion filed this lawsuit on June 30, 2025 seeking (1) a declaratory judgment on the threshold issue of arbitrability; (2) declaratory judgment on the issue of whether Aquarion is a successor to Wotan; and (3) declaratory judgment on the issue of whether JAG or any other arbitral body has jurisdiction over Peakview's claims against Aquarion. *See generally* ECF No. 1.

Peakview filed an answer and counterclaim on August 29, 2025, ECF No. 11. Peakview's counterclaim seeks (1) a declaration that an arbitrator, not the Court, must decide arbitrability; (2) a declaratory judgment on the issue of successor liability; (3) and declaratory judgment on the issue of arbitral jurisdiction; and also asserts claims for (4) unjust enrichment; and (5) fraudulent transfer. *See generally id.*

Before reaching Peakview's counterclaims (2)–(5) and Aquarion's motion to dismiss those claims, the Court must first decide the threshold issue of *who* decides

arbitrability—the Court or the arbitrator. The Court will consider the parties' arguments in turn.

## II.    PEAKVIEW'S ARGUMENT

In support of its argument that the arbitrator decides the issue of arbitrability, Peakview cites to the Agreement[4], which provides in relevant part,

> The Company and Peakview shall negotiate in good faith to resolve any disputes between them in connection with this Agreement. In the event of a failure to resolve the dispute, the dispute shall be resolved through binding arbitration with a single arbiter. Venue of all arbitration shall be Colorado. If the parties are unable to agree upon an arbiter, one shall be randomly selected by the scheduling department of the Judicial Arbiter Group, Inc.

ECF No. 11 ¶ 45 (quoting ECF No. 11-1 at 6).[5]

Peakview notes that the Agreement further specifies that it "shall be governed and construed in accordance with the laws of the State of Colorado without regard to the conflict of laws provisions thereof." ECF No. 11 ¶ 46 (citing ECF No. 11-1 at 7). Relying on Section 13-22-206(3) of the Colorado Revised Uniform Arbitration Act ("CUAA"), Peakview argues that "[a]n arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable." *Id.* ¶ 48 (quoting Colo. Rev. Stat. § 13-22-206(3)).

Peakview cites *BRM Construction, Inc. v. Marais Gaylord, L.L.C.*, 181 P.3d 283, 285 (Colo. App. 2007) and *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388

---

[4] The Court takes judicial notice of the Agreement because it was attached to Peakview's counterclaim. In evaluating a Rule 12(b)(6) motion to dismiss, the Court may consider documents incorporated by reference, documents referred to in the complaint that are central to the claims, and matters of which a court may take judicial notice. *Gee*, 627 F.3d at 1186.

[5] "The Company" refers to Wotan AG. *See* ECF No. 11-1 at 2.

U.S. 395 (1967) for the proposition that an arbitrator, not the Court, must decide challenges to the enforceability of a contract containing an arbitration provision.

The crux of Peakview's argument is that although Aquarion was a non-signatory to the Agreement, it is bound by the Agreement as a successor to Wotan. According to Peakview, the question here is not whether the agreement is enforceable against Aquarion, but whether the agreement is enforceable against Aquarion *as a successor-in-interest*. This question, Peakview argues, "must be decided by the arbitrator pursuant to § 13-22-206(3) and related case law." ECF No. 11 ¶ 52. Otherwise, "[f]ailing to send this claim to an arbitrator would require this Court to decide the ultimate issue in this case: whether [Aquarion] is the successor-in-interest of [Wotan]." *Id.* ¶ 53.

Finally, citing *City & Countty of Denver v. District Court In & For City & County of Denver*, 939 P.2d 1353, 1363–64 (Colo. 1997), Peakview argues that there is a presumption in favor of arbitration that the Court must apply. *Id.* ¶ 51

## III.    AQUARION'S ARGUMENT

In its Motion, Aquarion argues that "'[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." ECF No. 20 at 4 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (cleaned up)). In *AT&T*, the Supreme Court found "the question of arbitrability . . . is undeniably an issue for judicial determination." *AT&T*, 475 U.S. at 649. "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.* at 649.

6

Aquarion contends that Colorado law is consistent with this caselaw, and that in arguing otherwise, Peakview ignores the CUAA's "clear mandate" that "'[t]he court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate.'" ECF No. 20 at *5 (quoting Colo. Rev. Stat. § 13-22-206(2)).

Additionally, Aquarion argues that even if it were bound by the Agreement, "the arbitration provision on which Peakview relies does not delegate arbitrability to an arbitrator." *Id.* at 5.

The Court sees this slightly differently. The question is not whether this dispute is arbitrable. There is a contract that provides for arbitration—that much is obvious. Peakview is a party to that agreement. The question is whether Aquarion is (or should be) bound by that same arbitration agreement. And the threshold question is, who decides that issue.

## IV.    DISCUSSION

"The merits of a dispute is a first-order disagreement. The parties may also have a second-order dispute—whether they agreed to arbitrate the merits—as well as a third-order dispute—who should have the primary power to decide the second matter. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 143 (2024) (internal quotations and citations omitted). Here, the Court concerns itself with that third-order dispute.

Peakview is correct in pointing out that the Federal Arbitration Act ("FAA") has a liberal "national policy favoring arbitration." ECF No. 5 at 17. Doubts regarding arbitrability should be resolved in favor of coverage under the agreement "'unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *McAllister Bros. v. A & S Transp. Co.*,

7

621 F.2d 519, 522 (2d Cir. 1980) (citing to *United Steelworkers of Am. v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). However, the FAA's liberal national policy "does not require parties to arbitrate when they have not agreed to do so." *Volt Info. Sciences, Inc. v. Board of Trustees,* 489 U.S. 468, 478 (1989). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (internal quotation marks and citations excluded).

Indeed Section 4 of the FAA provides that,

> The court shall hear the parties, and *upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue*, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . *If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.*

9 U.S.C. § 4 (emphasis added).

When, as here, the parties dispute the existence of a valid arbitration agreement, there is no presumption in favor of arbitration. *Dumais v. Am. Golf. Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002); *see also Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998) ("Unlike the general presumption that a particular issue is arbitrable when the existence of an arbitration agreement is not in dispute, when the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away.") (internal citation omitted). As a result, "[a] court may compel arbitration of a particular dispute . . . only when satisfied that the 'making' of the agreement to arbitration is not at issue." *SCOR Reinsurance Co.*, 362 F.3d at 1290 (quoting *Spahr*, 330 F.3d at 1270). *See also I.S. Joseph Co. v. Mich. Sugar Co.*, 803 F.2d 396, 399 (8th Cir. 1986) (finding that whether there is an

8

arbitration agreement between the parties at all "is the essence of the District Court's inquiry under 9 U.S.C. § 4"). "[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985).

The issue presented in this case is almost identical to that seen in *Wheat, First Securities, Inc. v. Green*, 993 F.2d 814 (11th Cir. 1993). In *Wheat*, the Eleventh Circuit held that it was for a court, and not an arbitrator, to determine whether arbitration agreements could be enforced against an alleged successor-in-interest to the original party to the contracts. *Wheat,* 993 F.2d at 819. In that case, Green, the party seeking to compel arbitration against Wheat, had entered into contracts containing arbitration clauses with Wheat's predecessor, Marshall Securities. *Id.* at 815–17. Subsequently, Wheat purchased certain assets from Marshall Securities. The purchase agreement included an express provision denying the assumption of Marshall Securities' liabilities except for certain contracts specified in the agreement. *Id.* Wheat argued that since the contracts between Green and Marshall Securities were not amongst those enumerated in the purchase agreement, Green lacked the power to force Wheat into arbitration. *Id.*

In holding that arbitrability was for the Court to decide, the Eleventh Circuit relied on *I.S. Joseph Co.*, where the Eighth Circuit held,

> Absent some indication in the original agreement that the parties at the time provided for assignment of their interests under the agreement or otherwise intended to bind themselves to entities not then in existence, the validity of the assignment . . . is [an issue] which is reserved for the court under the [FAA].

*I.S. Joseph Co.*, 803 F.2d at 400.

9

Here, as in *Wheat*, Peakview, the party seeking to compel arbitration against Aquarion, entered into a contract containing an arbitration clause with Aquarion's alleged predecessor-in-interest, Wotan. Aquarion was not a signatory to the Agreement. Subsequent to Peakview and Wotan executing the Agreement, Aquarion purchased certain assets from Wotan. Aquarion argues that the APA contained an express provision denying the assumption of Wotan's liabilities except for those that were specifically transferred, and that Wotan's liability for the Success Fee was not amongst the liabilities that were specifically transferred to Aquarion. The Court finds that the facts of this case "adequately call into question whether an arbitration agreement existed" between Aquarion and Peakview, and thus it is for this Court to decide the issue of arbitrability. *Wheat,* 993 F.2d at 819.

This case is also analogous to *National Union Fire Ins. Co. of Pittsburgh, PA v. Stucco Sys., LLC,* 289 F. Supp. 3d 457 (S.D.N.Y. 2018). There, National Union and ANSE had entered into an agreement containing an arbitration clause. The agreement further explicitly delegated arbitrability to an arbitraor. *Id.* at 466. Subsequently, National Union filed a demand for arbitration against a third-party, Stucco, as a successor-in-interest to ANSE. Stucco was not a signatory to the original agreement and there was nothing in the agreement that mentioned or referenced Stucco. *Id.* The Southern District of New York found that the agreement's mere statement that it would extend to ANSE's "successor orrganizations" was not an "unmistakable agreement to arbitrate" on the part of Stucco. *Id.* (internal citations omitted). The opinion further ruled, and this Court agrees, that to use the arbitration clause to "demand that arbitrators settle the question of who are the parties to the agreement puts the proverbial cart—the question of

whether the arbitration agreement is valid—before the horse—whether a non-signatory has anything to do with a contract it did not clearly sign." *Id.*

Aquarion further argues, that even if it were to concede that it was bound to the Agreement, the arbitration provision relied on by Peakview does not actually delegate arbitrability to an arbitrator. ECF No. 20 at 5. Indeed, Peakview does not seem to dispute this in its response. In its reply, Aquarion states, and the Court agrees, that Peakview has failed to identify any language in the Agreement delegating arbitrability to an arbitrator. ECF No. 30 at 4. Absent such "clear and unmistakabe evidence," *First Options of Chicago, Inc.*, 514 U.S. at 944, the Court cannot make a finding that the parties to the Agreement agreed to arbitrate arbitrability.

In the absence of such an agreement[6], and especially where one party denies the existence of a contract altogether, it is for the Court to decide the issue of arbitrability. *See Sandavik AB v. Advent Int'l Corp.*, 220 F.3d 99, 107 n. 5 (3d Cir. 2000) (citing with approval *I.S. Joseph*'s holding that "the enforceability of an arbitration clause is a question for the court when one party denies the existence of a contract with the other"); *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785 (11th Cir. 2008) (quoting FAA § 4) ("Once an agreement to arbitrate is thus put 'in issue,' the Federal Arbitration Act (FAA) requires the district court to 'proceed summarily to the trial thereof' and if the objecting party has not requested a jury trial, 'the court

---

[6] *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy…An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.").

shall hear and determine such issue.'"); *Bruni v. Didion*, 73 Cal. Rptr. 3d 395, 407 (Cal. Ct. App. 2008), *as modified* (Mar. 24, 2008) (finding that a court not arbitrator must determine that the party resisting arbitration not only did not sign the contract, but also is not bound as an assignee or successor-in-interest of one of the original parties).

In arguing the contrary, Peakview cites two cases—*BRM Construction, Inc.* and *Prima Paint Corp.* However, Peakview's "reliance on *Prima Paint* is misplaced, because in that case, there was no dispute that the two parties to the litigation had entered into a consulting agreement that contained a 'broad' arbitration clause." *Wheat*, 993 F.2d at 818. As the Eleventh Circuit summarized,

> [w]hen a dispute arose, plaintiff Prima Paint sought to rescind the agreement and avoid arbitration by arguing that it had been fraudulently induced to enter the contract. The Supreme Court found that a district court's authority to resolve arbitrability questions is rooted in the distinction between challenges to the contract as a whole and challenges directed exclusively toward the arbitration clause.

*Id.* The Supreme Court in *Prima Paint* held,

> [I]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language [of FAA § 4] does not permit the federal court to consider claims of fraud in the inducement of the contract generally.

*Prima Paint Corp.*, 388 U.S. at 404. Unlike in *Prima Paint*, the parties here dispute whether *any* contract was executed between them.

Peakview likewise misinterprets the holding in *BRM Construction,* that "[t]he arbitrator must decide challenges to the enforceability of the contract as a whole." *BRM Const., Inc.*, 181 P.3d at 285. The complete quotation reads as follows,

> The court's inquiry as to the validity of the arbitration clause is limited to specific challenges to '*the agreement to arbitrate,*' not the broader contract

12

> containing the arbitration provision…The arbitrator must decide challenges to the enforceability of the contract as a whole.

*Id.* (internal quotation marks and citations omitted). Here, Aquarion is not challenging the enforceability of the Agreement as a whole—it disputes that it ever had anything to do with the Agreement to begin with. In *BRM Construction,* there was again no dispute that the two parties had entered into a binding contract with one another. There, the Colorado Court of Appeals found that because the contract in question explicitly provided that disputes over the interpretation of the contract's terms (and the arbitration clause was one such term) were to be settled by arbitration, arbitrability was to be decided by the arbitrator. *Id.* at 286. Peakview does not point the Court to any such language in the Agreement, and more importantly, Aquarion disputes that it was a party to the Agreement at all. Accordingly, *BRM Construction* is clearly distinguishable.

**V.    CONCLUSION**

For the reasons set forth above, the Court concludes that it must decide the threshold issue of arbitrability. Accordingly, it is hereby **ORDERED** that Aquarion's Motion to Dismiss Peakview Partners, LLC's Counterclaims, ECF No. 20, is **GRANTED IN PART** such that Peakview's first clam for declaratory relief, which seeks a

declaration that an arbitrator, not the Court, must decide arbitrability, is **DISMISSED** as a matter of law.

Having addressed this threshold issue, the Court reserves judgment on the remainder of Aquarion's Motion for a subsequent decision.

There is a follow-up status conference in this case scheduled for April 3, 2026. *See* ECF No. 31. The Parties should be prepared to discuss how this case moves forward in light of the Court's decision outlined above.

Dated at Denver, Colorado this 27th Day of March 2026.

N. Reid Neureiter
United States Magistrate Judge

14